AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

**FILED**
February 10, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: __Fidel Morales__
DEPUTY

United States of America
v.
Nancy Dominguez
&
Hector Ruben Rojas

Case No. **EP:25-M-00531-MAT**

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __02/07/2025__ in the county of __El Paso__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 952a | knowingly and intentionally import into the United States from the Republic of Mexico a quantity of methamphetamine. |
| 21 USC 963 | knowingly and intentionally conspire to import into the United States from the Republic of Mexico a quantity of methamphetmaine, to wit; approximately 213.3g (gross weight) of methamphetamine, a Schedule II Controlled Substance; |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

Complaint sworn to telephonically on __February 10, 2025__ at __02:00 PM__ and signed electronically. **FED.R.CRIM.P. 4.1(b)(2)(A)**

*Complainant's signature*

Marilen Sommers
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __02/10/2025__

*Judge's signature*

City and state: __El Paso, Texas__

Miguel A. Torres
*Printed name and title*

Affidavit

On February 7, 2024, at approximately 2:20 a.m., Hector Ruben ROJAS and Nancy DOMINGUEZ entered the United States from the Republic of Mexico through the Paso Del Norte (PDN) Port of Entry (POE), in El Paso, Texas, which is within the Western District of Texas. ROJAS and DOMINGUEZ crossed into the US through the pedestrian lanes of the POE.

The CBPO's assigned to primary inspection noticed a male and a female enter the pedestrian area. One CBPO signaled to DOMINGUEZ to approach primary lane #9 while the other CBPO called ROJAS to the primary lane #7.

ROJAS presented his duly issued Texas drivers license to the primary Customs and Border Protection Officer (CBPO). The CBPO asked ROJAS what the purpose of his trip to Mexico was; ROJAS stated he went to pick "her up". ROJAS was referring to Nancy DOMINGUEZ who was at pedestrian lane #9. The CBPO asked ROJAS what he did for a living; ROJAS stated he was unemployed. The primary CBPO observed ROJAS fidgeting with a thermos. The CBPO asked ROJAS what he was carrying; to which ROJAS stated nothing. The CBPO asked ROJAS what was in the thermos, to which he stated juice. The CBPO asked ROJAS to open the thermos. ROJAS opened the top lid and showed the CBPO the secondary lid used for pouring. The CBPO asked ROJAS to remove the pouring lid, and ROJAS stated it was just ice. The CBPO used his flashlight to look into the thermos and noticed a bundle wrapped in black tape. The CBPO requested the assistance of a Canine Enforcment Officer (CEO). The CEO informed the CBPO that his canine alerted to the trained odor of narcotics emitting from ROJAS. ROJAS was placed in hand restraints and escorted to the Passport Control Secondary (PCS) area.

While at primary lane 9, DOMINGUEZ stated she was a United States citizen to the CBPO but did not have any documentation. The primary CBPO admitted DOMINGUEZ and then was advised by the CBPO processing ROJAS that ROJAS was possible carrying narcotics. DOMINGUEZ was still in the building and was asked to return to the primary lane. The CBPO asked DOMINGUEZ why she went to Juarez; DOMINGUEZ stated she went to visit her husband who was previously deported. The CBPO asked DOMINGUEZ how she knew ROJAS. DOMINGUEZ stated she asked ROJAS to pick her up because she was afraid her husband was going to hit her. The CEO then conducted a sniff inspection on DOMINGUEZ. The CEO informed the CBPOs his canine had alerted to the trained odor of narcotics emitting from DOMINGUEZ's bags. DOMINGUEZ was escorted into the PCS area for further inspection.

Inside PCS, a pat down inspection was conducted on ROJAS with negative results by two male officers.

A pat down inspection was conducted on DOMINGUEZ by two female officers. The CBPOs noticed that DOMINGUEZ was wearing a girdle that appeared abnormally tight. The CBPOs asked DOMINGUEZ if she was wearing underwear underneath her girdle.

DOMINGUEZ stated no. Due to the CBPOs experience with previous internal and body carriers not wearing underwear and commonly wearing girdles, the CBPOs requested a partial pat down inspection from the Supervisory CBPO (SCBPO). A partial pat down inspection was approved by the SCBPO. During the partial pat down inspection the CBPOs discovered a clear bag covered in a blue substance underneath her pannus stomach. DOMINGUEZ voluntarily gave the CBPOs the bag and admitted it was crystal methamphetamine. DOMINGUEZ informed the CBPOs she knew the man she was traveling with was a friend and she was aware that he is involved in a narcotics distribution organization.

The two bundles wrapped in black tape found in the thermos held by ROJAS field tested positive for the properties of methamphetamine with a total gross weight of 173.6g. The clear plastic bag found on DOMINGUEZ field tested positive for the properties of methamphetamine with a total gross weight of 39.7g. In total, 213.3g of methamphetamine were seized from ROJAS and DOMINGUEZ.

A Homeland Security Investigations (HSI) Task Force Officer (TFO) read ROJAS his Miranda Warnings in the English language in the presence of an HSI Special Agent (SA). ROJAS agreed to speak to agents without the presence of an attorney.

ROJAS stated he went to Mexico to pick up DOMINGUEZ because she needed help. ROJAS stated she was carrying multiple bags and the thermos, and he offered to help her carry the items. ROJAS stated DOMINGUEZ gave him the thermos and was unaware of what was inside of it. ROJAS stated he knew DOMINGUEZ was crossing narcotics within her pannus stomach. ROJAS stated that he has crossed both fentanyl and methamphetamine rectally over ten (10) times and would not cross it inside of a thermos. ROJAS stated he crossed narcotics through the POE the day prior (2/6/2025).

A border search of ROJAS' cell phone revealed photos of blue "M-30" marked pills, black taped bundles taken on February 2, 2025, and blue taped bundles taken on February 6, 2025. A search of his cell phone also revealed discussions of finding "crossers". This term is commonly used to describe a person who is going to cross narcotics through the POEs for someone.

An HSI SA read DOMINGUEZ her Miranda Warnings in the English language in the presence of an HSI TFO. DOMINGUEZ agreed to speak to agents without the presence of an attorney.

DOMINGUEZ stated this was her first time crossing narcotics through the POE. DOMINGUEZ stated she called ROJAS to go and get her in Mexico. DOMINGUEZ stated she knew she was crossing methamphetamine and that it was illegal to do so. DOMINGUEZ stated the thermos belonged to ROJAS and he did not get the thermos from her. DOMINGUEZ stated she did not know what was inside the thermos. DOMINGUEZ stated she is normally responsible for guiding others who are crossing narcotics through the POEs and has done so numerous times.

A border search of DOMINGUEZ' cell phone revealed multiple conversations discussing "blues". This term is commonly used in reference to fentanyl pills. Text messages between ROJAS and DOMINGUEZ also discuss DOMINGUEZ going to meet up with ROJAS to give him "jale" on January 15, 2025. "Jale" is a slang term meaning work, commonly used to refer to work involving narcotics. On January 17, 2025, ROJAS and DOMINGUEZ revealed a possible narcotics smuggling venture using the same tactics. Through text messages DOMINGUEZ tells ROJAS to go behind her, and to take her purse and the cup too.

Because this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.